UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff(s),<br><br>v.<br><br>LIVE VENTURES INCORPORATED, et al.,<br><br>Defendant(s). | Case No. 2:21-CV-1433 JCM (VCF)<br><br>ORDER |

Presently before the court is defendant JanOne, Inc's motion to dismiss plaintiff Securities and Exchange Commission ("SEC")'s complaint. (ECF No. 22). The SEC filed a response (ECF No. 62), to which JanOne replied (ECF No. 66).

Also before the court is defendant Virland Johnson ("Johnson")'s motion to dismiss the SEC's complaint. (ECF No. 23). The SEC filed a response (ECF No. 62), to which Johnson replied (ECF No. 67).

Also before the court is defendant Kingston Holdings ("Kingston")'s motion to dismiss the SEC's complaint. (ECF No. 34). The SEC filed a response (ECF No. 63), to which Kingston replied (ECF No. 68).

Also before the court is defendants John Isaac ("Isaac") and Live Venture Incorporated ("LVI") (collectively, the "LVI defendants")'s motion to dismiss the SEC's complaint. (ECF No. 35). The SEC filed a response (ECF No. 61), to which Johnson replied (ECF No. 69).

Also before the court are Johnson and the Live Venture defendants' respective requests for judicial notice. (ECF Nos. 24–30 and 36).

. . .

**James C. Mahan**
**U.S. District Judge**

**I.   Background**

This action arises from a series of stock transactions by defendant LVI and Isaac, its CEO. Isaac and LVI allegedly participated in two different securities fraud conspiracies to boost LVI's earnings.

<u>A.</u>  Fiscal Year ("FY") 2016: The Novalk Amendment

In 2014, LVI entered into an agreement to purchase software from Novalk Apps S.A.S ("Novalk"). (ECF No. 1 at 5). This agreement then sat dormant for two years without LVI making any payments. (*Id.*) On or about November 30, 2016, Isaac contacted Novalk's owner to "cancel" the contract. (*Id.*) Conversations between the two continued, and they eventually reached an agreement on December 19, 2016, wherein Isaac reaffirmed LVI's commitment to purchase the software, but at a lower price (the "Novalk Amendment"). (*Id.* at 6). The Novalk Amendment provided that the effective date of the transaction would be backdated to September 15, 2016. (*Id.*) Allegedly, this backdating allowed Isaac and Johnson (who was working as a financial consultant for LVI) to report the discount in the contract as "income" on LVI's FY 2016 Form 10-K, thus overstating LVI's yearly profits. (*Id.* at 6–8). Isaac then relayed those same, allegedly false, facts to LVI accountants and to the public in a press release touting LVI's profits. (*Id.* at 9–11).

Meanwhile, on the same day Isaac sent the press release, he allegedly conspired with Kingston to commit further fraud. According to the SEC, Isaac fraudulently accessed a Kingston brokerage account and placed several orders to sell LVI stock after publishing the positive press release. (*Id.* at 11, 13). While the stock price did not reach the level necessary to execute all the orders, five were executed for a total profit of $48,000. (*Id.* at 14).

<u>B.</u>  FY 2017: The ApplianceSmart Transaction

The following year, Isaac, LVI, Johnson, and JanOne allegedly participated in another fraudulent transaction. In December 2017, LVI and JanOne entered into a stock purchase agreement wherein JanOne sold its subsidiary, ApplianceSmart, to an unnamed subsidiary of LVI for $6.5 million. (*Id.* at 18). The agreement purported to be effective as of December 30, 2017. (*Id.*) ApplianceSmart's stock was encumbered with a security interest held by MidCap

Financial, however. (*Id.*) Allegedly, JanOne continued to fund ApplianceSmart's operations until the expiration of that security agreement, and LVI did not actually take control of ApplianceSmart until sometime in calendar year 2018. (*Id.* at 19–20). LVI's filings with the SEC recognized the income from that transaction in a reporting period ending on December 31, 2017, ostensibly before it had actually taken control of ApplianceSmart. (*Id.*)

### C. The Executive Compensation Reporting

Amidst these transactions, the SEC also contends that Isaac and LVI did not accurately report Isaac's compensation as an officer. (*Id.* at 26). According to the complaint, LVI's Form 10-Ks and proxy statements in FYs 2016–2018 failed to properly disclose an annual housing stipend paid to Isaac. (*Id.*)

## II. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

**James C. Mahan**
**U.S. District Judge**

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

Allegations of fraud are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud . . . ."). Rule 9(b) operates "to give defendants notice of the particular misconduct which is alleged," requiring plaintiffs to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citations omitted). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.* (citations omitted).

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

James C. Mahan
U.S. District Judge

The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

### III. Discussion

As an initial matter, the court grants both Johnson and the LVI defendants' requests for judicial notice and takes notice of the facts referenced therein. *See* (ECF Nos. 24–30; 36). The court also has sufficient information to decide the instant motion based on the filings and thus denies all parties' requests for oral argument. LR 78-1.

Section 10(b) of the Securities Exchange Act makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device" in violation of SEC rules. 15 U.S.C. § 78j(b). SEC Rule 10b-5 states, in relevant part,

> It shall be unlawful for any person . . . (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5(a)-(c).

Rule 10b-5 requires (1) a material misrepresentation, (2) in connection with the purchase or sale of a security, (3) with scienter, (4) by means of interstate commerce. *SEC v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011).

A misrepresentation is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (citation omitted). Misrepresentations about the safety of an investment are material. *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 930 (9th Cir. 1991).

Scienter is the "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). A showing of knowing or reckless

1   conduct is sufficient to meet the element of scienter.  *Vernazza v. SEC*, 327 F.3d 851, 860 (9th
2   Cir. 2003).
3         Section 17(a) of the Securities Act of 1933 makes it unlawful "for any person in the offer
4   or sale of any securities . . ."

> (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made . . . not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

9   15 U.S.C. § 77q(a)(1)-(3).
10      Like Rule 10b-5, section 17(a) requires (1) a material misrepresentation, (2) in
11  connection with the purchase or sale of a security, (3) by means of interstate commerce.  *SEC v.*
12  *Dain Rauscher, Inc.*, 254 F.3d 852, 855-56 (9th Cir. 2001).  While section 17(a)(1) requires
13  scienter, sections 17(a)(2) and 17(a)(3) do not.  *See Aaron v. SEC*, 446 U.S. 680, 697 (1980).
14      Further, Rule 13b2-2 states that "[n]o director or officer of an issuer shall, directly or
15  indirectly . . . [m]ake or cause to be made a materially false or misleading statement to an
16  accountant."  17 C.F.R. § 240.13b2-2.  A false statement under Rule 13b2-2 must be made
17  knowingly, in that the accused must have been "aware of the falsification and did not falsify
18  through ignorance, mistake, or accident." *United States v. Reyes*, 577 F.3d 1069, 1080 (9th Cir.
19  2009); *see also United States v. Goyal*, 29 F.3d 912, 916 n.6 (9th Cir. 2010).
20      Similarly, Rule 13a-14 requires every "principal executive" and "principal financial
21  officer" of a stock-issuing company to sign a certification attesting to the truthfulness of any
22  public reports, including Forms 10-Q and 10-K.  17 C.F.R. § 240.13a-14.  That certification
23      A.  LVI Defendants
24      The SEC brings fifteen claims against one or both of the LVI defendants.  These claims
25  fall into one of three categories: (1) conduct related to the Novalk Amendment, (2) conduct
26  related to the ApplianceSmart transaction, and (3) general reporting violations.  *See* (ECF No. 1).
27  In response, the LVI defendants present essentially the same arguments to dismiss each claim.
28  First, they argue that in each case there was never a material misrepresentation and therefore the

violations fail as a matter of law. (ECF No. 35 at 6). Second, they contend that even if the misrepresentations were material, the SEC does not sufficiently allege scienter. (*Id.*) As discussed below, these arguments fail at the dismissal stage. The SEC sufficiently pleads each of its claims.

### *1.* Claims 1–5: The Novalk Amendment

The SEC's first five claims relate to the LVI defendants' handling of the Novalk Amendment. The SEC alleges that the Novalk Amendment was not negotiated until December 2016, after the 2016 fiscal year had ended. (ECF No. 1 at 7). It also alleges that Isaac intentionally selected the effective date of the agreement to boost earnings numbers. (*Id.*) Those allegations, if true, substantiate the SEC's first five claims.

The LVI defendants argue that the contract's backdating was immaterial. (ECF No. 35 at 8). That is a question of fact not appropriate for adjudication on a motion to dismiss. In the alternative, they argue that the SEC fails to meet a heightened burden for pleading scienter. (*Id.* at 9). The SEC may plead scienter generally, however, so long as it complies with Fed R. Civ. Pro. 9(b). *See SEC v. Berry*, 580 F. Supp. 2d 911, 920–21 (N.D. Cal. 2008).

The complaint alleges that Isaac knew he did not negotiate the Novalk amendment until after the end of the fiscal year, but intentionally backdated it, and that false assertion was repeated to accountants and in a press release. (ECF No. 1 at 8–11). Taking the nonconclusory allegations as fact, the SEC could substantiate its claims. The LVI defendants' motion to dismiss is denied as to the SEC's first five claims.

### *2.* Claims 8–9: ApplianceSmart

Claims 8 and 9 make similar allegations but in relation to a separate set of facts. Here, the SEC alleges Isaac, LVI, Johnson, and JanOne misrepresented the effective date of LVI's acquisition of ApplianceSmart, allowing LVI to report a profitable quarter where it otherwise could not have. *See* (ECF No. 1 at 18–20).

As with the allegations surrounding the Novalk Amendment, the SEC sufficiently pleads its claims here. The LVI defendants again claim that there was no material misrepresentation in

the reporting, and this is once more a question of fact inappropriate for a motion to dismiss. Likewise, the complaint sufficiently alleges scienter. *See* (ECF No. 35 at 18).

The SEC contends that the agreement between JanOne and LVI did not contain a provision that transferred control of the acquiree as of December 31, 2017, the end of the disputed quarter. (*Id.* at 20). Assuming that allegation is true, all of the alleged parties either knew or were recklessly ignorant of the fact that LVI did not control ApplianceSmart at the end of the quarter and thus any document reporting otherwise was false. That alone is enough to sufficiently plead the claims in question. The SEC sufficiently alleges its claims as to the ApplianceSmart transaction. The court denies the LVI defendants' motion to dismiss as to claims eight and nine.

### 3. Claims 6, 10–11, 13–16: The Sarbanes-Oxley Reporting Violations

The SEC also alleges several violations of reporting rules under the Exchange Act and the associated regulations. *See* (ECF No. 1 at 34, 38–40, 41–43). The LVI defendants' lone argument against dismissal is that all these claims require there to have been a primary violation, and since nothing relating to the Novalk Amendment or the ApplianceSmart transaction was a material misrepresentation, there is no primary violation. (ECF No. 35 at 22).

As discussed above, this position is presumptive, and incorrect. The LVI defendants' arguments about the materiality of the misrepresentations fail at this procedural stage. It may be that the misrepresentations in question were immaterial, but at this stage the court evaluates the claims under a plausibility standard, not a certainty standard. *Iqbal*, 556 U.S. at 678 (citation omitted).

The SEC plausibly alleges material misrepresentations related to both the Novalk Amendment and the ApplianceSmart acquisition. Thus, the LVI defendants' argument for dismissal of the Sarbanes-Oxley violations also fail. The court denies the LVI defendants' motion as to claims 6, 10–11, and 13–16.

### 4. Claim 17: The Executive Compensation Proxy Claim

Claims under Section 14(a) require a plaintiff show that the defendant made a material misrepresentation or omission in a proxy statement, and the misrepresentation or omission was

James C. Mahan
U.S. District Judge

- 8 -

made at least negligently. *See Desaigouidar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000)). "The requisite state of mind under [Section 14(a)] is negligence." *Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 887 (N.D. Cal. 2008). Claims under Section 14(a) must comply with Rule 9(b). *See In re McKesson HBOC, Inc. Sec. Lit.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000).

Rule 14a-3 requires disclosure of "all" compensation "awarded to, earned by, or paid to" a company's "principal executive officer." 17 C.F.R. § 229.402. The SEC alleges—and the LVI defendants do not rebut—that LVI failed to disclose at least $54,000 for a housing reimbursement for Isaac in its 2016 Form 10-K. (ECF No. 1 at 26–28; ECF No. 35 at 20). Thus, LVI cannot claim it disclosed *all* of Isaac's compensation. *See* 17 C.F.R. § 229.402. On that ground alone, the SEC has sufficiently pled its seventeenth claim. Whether the compensation is actual or accrued is irrelevant; LVI had a duty to disclose all compensation, which the SEC alleges it did not. The LVI defendants' motion to dismiss is denied as to the seventeenth claim.

B. Johnson and JanOne

The SEC brings nine of its seventeen claims against Johnson and one against JanOne. *See* (ECF No. 1). The claims against Johnson relate to his actions as a consultant for LVI and as the chief financial officer for both LVI and JanOne. The claim against JanOne stems from its participation (through Johnson) in the ApplianceSmart transaction.

JanOne and Johnson primarily argue that the SEC's allegations do not deserve the inference of truthfulness typically afforded to allegations at this dismissal stage. (ECF Nos. 22—23). They argue that the SEC misappropriates, misinterprets, and misunderstands their actions and thus its allegations of fraud fail to state a claim for relief.

However, at this stage, the allegations contained in the complaint are assumed to be true. Under that standard, the SEC has alleged that JanOne and Johnson made misrepresentations (ECF No. 1 at 22), participated in a scheme with co-defendants to defraud consumers (*Id.* at 24), and committed fraud in filing certain financial documents (*Id.* at 23). Therefore, the SEC meets its burden at this dismissal stage and the court denies JanOne's and Johnson's motions to dismiss.

**James C. Mahan**
**U.S. District Judge**

- 9 -

C.  Kingston

The SEC brings two claims against Kingston, both alleging fraud under the Exchange Act and SEC rules. (*Id.* at 31, 33). These claims are based on allegations that Isaac traded LVI stock through a Kingston brokerage account. The SEC alleges that Kingston is liable for Isaac's actions because Kingston was Isaac's "nominee." (*Id.* at 33). The court is not persuaded.

The complaint posits that because Isaac made trades through a Kingston account, Kingston must have consented to Isaac's actions. (*Id.* at 17). Notwithstanding this, the SEC also contends that Isaac impersonated Kingston's owner to access online brokerage services and made trades in secret. (*Id.* at 12–14). Those allegations are incompatible. If Isaac impersonated Kingston's owner and secretly traded in its accounts, then Kingston itself did not act at all, much less with the scienter required of a fraud claim. Without affirmative allegations that Kingston actively aided Isaac in some way, the SEC fails to state a claim for relief against Kingston. The court dismisses the SEC's claims against Kingston without prejudice.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that JanOne's motion to dismiss (ECF No. 22) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Johnson's motion to dismiss (ECF No. 23) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Kingston's motion to dismiss (ECF No. 34) be, and the same hereby is, GRANTED without prejudice.

IT IS FURTHER ORDERED that the LVI defendants' motion to dismiss (ECF No. 35) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Johnson's requests for judicial notice (ECF No. 24–30) be, and the same hereby are, GRANTED.

. . .

. . .

. . .

James C. Mahan
U.S. District Judge

1    IT IS FURTHER ORDERED that the LVI Defendants' request for judicial notice (ECF
2    No. 36) be, and the same hereby is, GRANTED.
3    DATED September 7, 2022.

_____
UNITED STATES DISTRICT JUDGE