1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff(s),

v.

LIVE VENTURES INCORPORATED, et al.,

Defendant(s).

Case No. 2:21-CV-1433 JCM (MDC)

ORDER

Presently before the court are four motions to strike filed by defendants Live Ventures Incorporated ("Live"), Jon Isaac ("Isaac"), and Virland Johnson ("Johnson") (collectively "defendants"). (ECF Nos. 170, 171, 182, 188). The SEC responded to each motion (ECF Nos. 174, 175, 189, 190), to which defendants replied (ECF Nos. 179, 178, 191, 192).

I.    **Background**

This action arises from a series of stock transactions by defendant Live and Jon Isaac, its CEO. Isaac and Live allegedly participated in two different securities fraud conspiracies to boost Live's earnings, and, as relevant here, the SEC contends Isaac perpetrated some of those fraudulent activities through former defendant Kingston Diversified Holdings, LLC ("Kingston").

In 2014, Live entered into an agreement to purchase software from Novalk Apps S.A.S. ("Novalk"). (ECF No. 76 at 5). This agreement sat dormant for two years without Live making any payments. (*Id.*). On or about November 30, 2016, Isaac contacted Novalk's CEO Juan C. Yunis to "cancel" the contract. (*Id.* at 5–6). Conversations between the two continued, and they eventually reached an agreement on December 19, 2016, wherein Isaac reaffirmed Live's commitment to purchase the software, but at a lower price (the "Novalk Amendment"). (*Id.* at 6).

**James C. Mahan**
**U.S. District Judge**

1    The Novalk Amendment provided that the effective date of the transaction would be

2    backdated to September 15, 2016. (*Id.*). Allegedly, this backdating allowed Isaac and Johnson,

3    who was working as a financial consultant for Live, to report the discount in the contract as

4    "income" on Live's FY 2016 Form 10-K, thus overstating Live's yearly profits. (*Id.* at 6–8). Isaac

5    then relayed those same, allegedly false, facts to Live accountants and to the public in a press

6    release touting Live's profits. (*Id.* at 9–11).

7    Yunis is also the sole member of Kingston. (*Id.* at 4, 12). Kingston was allegedly formed

8    in 2012 by Individual G who eventually sold Kingston to Yunis, where it is believed that Isaac

9    was involved in the documentation for transfer of ownership. (*Id.* at 12). Isaac and Yunis are

10   allegedly close personal friends. (*Id.* at 5). In December 2016, Kingston's certificate of

11   amendment with the State of Delaware documented Kingston's address as the mailing address of

12   Isaac Capital Group LLC ("ICG"). (*Id.*). Isaac is listed as the president and sole member of ICG

13   with the same address in Kingston's certificate of amendment in Live's Form 10-K for FYs 2015

14   and 2016. (*Id.*). Beginning in December 2016, Kingston's address of record for its Fidelity and

15   Wells Fargo accounts was a San Diego, California, office maintained by Isaac. (*Id.*).

16   Beginning in November 2017, Kingston's address of record at Fidelity was the same Las

17   Vegas, Nevada, address on Isaac's Wells Fargo bank account statements. (*Id.* at 12). Live's Form

18   10-K for 2016, also shows Kingston's address as the same address that appeared on the Wells

19   Fargo bank account statement for Isaac in December 2016. (*Id.* at 12).

20   On a recorded call on or about December 6, 2016, Isaac contacted Kingston's brokerage

21   firm, identifying himself as Yunis to change the account's electronic log-in credentials. (*Id.* at 13).

22   According to the SEC, Kingston, through Yunis, "acquiesced" in Isaac accessing its brokerage

23   account. (*Id.*).

24   After the market closed on December 27, 2016, two stock reporting websites posted or sent

25   alerts about Live's earnings announcement scheduled for the next day. (*Id.* at 14). The same day,

26   Isaac sent the final version of the allegedly false press release to Live's public relations firm,

27   instructing it to provide the widest possible distribution. (*Id.*). The following day on December

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

1    28, 2016, Live's allegedly false press release was issued at 7:00 am eastern standard time.  (*Id.* at

2    14–15).

3         On December 28, 2016, Kingston's brokerage account was accessed from an IP address

4    associated with Isaac's Las Vegas residence using a TOR browser that conceals the user's location

5    and usage from anyone conducting network surveillance or traffic analysis.  (*Id.* at 15).   The

6    account placed twenty-eight "good till cancel orders." (*Id.*).  On December 28, 2016, Live's stock

7    price opened at $31.32 per share, an increase of 20% from the closing price on December 27, 2016.

8    (*Id.* at 15).  Five of the limit orders placed to sell Live stock on Kingston's account were executed

9    and generated gross proceeds of about $48,000.  (*Id.* at 15).

10         On November 17, 2017, Kingston's brokerage account was accessed from an IP address

11    associated with Isaac's Las Vegas residence, wiring $240,274.02 to its bank account.  (*Id.* at 17).

12    Almost a month later on December 14, 2017, approximately $242,000.00 was transferred from

13    Kingston's bank account to Novalk's bank account.  (*Id.*).   On that same day, Novalk wired

14    $242,000.00 from its bank account to Isaac's personal bank account.  (*Id.*).

15         Following an investigation into the transactions from Kingston's trading account—and

16    others related to codefendants—the SEC filed a seventeen-claim complaint alleging Isaac, Live,

17    Kingston, and others committed a variety of securities violations.  (ECF No. 1).  All defendants

18    moved to dismiss the complaint, and this court denied those motions except for Kingston's.  *See*

19    (ECF No. 74).

20         The court has since granted joint motions for judgment against defendants JanOne Inc.

21    (ECF No. 144) and Kingston (ECF No. 153).  The remaining defendants have moved for summary

22    judgment (ECF No. 172) and the SEC has moved for partial summary judgment (ECF No. 173).

23    However, because of the slew of evidentiary disputes that have arisen during the pendency of the

24    cross motions for summary judgment, the court will address these issues before ruling on summary

25    judgment.[1]

26    _____

27         [1]    The SEC alleges that the evidentiary challenges do not comport with local rules regarding page
     limits.  (ECF No. 189). The SEC cites *Werbicky v. Green Tree Servicing, LLC*, to support its proposition. No. 2:12-
28    CV-01567-JAD, 2015 WL 1806857 (D. Nev. Apr. 21, 2015).  In *Werbicky*, the parties made 27 separate filings totaling
     "approximately 350 pages of briefs, not including exhibits."  *Id.* at 4.

**James C. Mahan**
**U.S. District Judge**

1    **II.    Motions to exclude experts John Drum and Eugene Canjels. [2]**

2    If a motion to exclude relating to expert evidentiary disputes is filed at the summary

3    judgment stage, the court is not required to decide the issue when the parties do not rely on the

4    report or testimony, either in the motion or in any opposition. *Audionics Sys., Inc. v. AAMP of*

5    *Fla., Inc.*, No. CV1210763MMMJEMX, 2015 WL 12712288, at \*17 (C.D. Cal. July 10, 2015)

6    (stating it would be "a purely academic exercise" to rule on a motion to exclude when summary

7    judgment movant did not cite disputed expert report).

8    Here, the SEC does not rely on material prepared by John Drum or Eugene Canjels in their

9    motion for summary judgment or in opposition to defendants' motion for summary judgment. If

10   defendants object to the use of Drum's or Canjels' report and testimony at trial, they may argue

11   this at a later point in a motion in limine; these arguments are currently premature. *Id.*; *Celerity,*

12   *Inc. v. Ultra Clean Tech. Sys. & Serv., Inc.*, No. C-05-4374MMC, 2007 WL 1202240, \*2 n. 2

13   (N.D. Cal. Apr. 23, 2007). Accordingly, the motion to exclude Drum's and Canjels' report and

14   testimony is denied without prejudice.

15   **III.    Motions to exclude portions of Robert C. Stillwell's declaration[3]**

16   Robert C. Stillwell ("Stillwell") is a trial attorney for the SEC on this matter and the senior

17   counsel assigned to the investigation of this case. (ECF No. 173-2). Stillwell made a declaration

18   in support of the SEC's motion for partial summary judgment with the purpose of providing true

19   and correct copies of documents and transcripts cited in the SEC's supporting memorandum. (*Id.*).

20   Defendants makes hearsay objections to numerous exhibits in Stillwell's declaration and

21   argue the court should strike this evidence from the record when deciding the pending cross

22

23   Here, defendants filed two of their evidentiary disputes on the same day as their motion for summary
     judgment. (*See* ECF Nos. 172–73). Defendants then filed two *separate* evidentiary disputes in response to the SEC's

24   motion for summary judgment. (ECF Nos. 182, 188). The parties, largely as a result of defendants' excessive motion
     practice, have made 18 filings consisting of over 375 pages of briefs, not including exhibits, regarding the cross

25   motions for summary judgment. However, as defendant correctly points out, the solution in *Werbicky* was to deny
     both motions for summary judgment without prejudice with instruction to file their motions again in compliance with

26   local rules. *Id.* at 5–6. The court finds a solution such as this impractical and, therefore, will consider all motions
     before addressing summary judgment. Nevertheless, parties should be mindful going forward as not to "do violence

27   to the spirit" of the local rules. *Id.*at 5.

     [2] (ECF Nos. 170, 171).
28

     [3] (ECF Nos. 182, 188).

**James C. Mahan**
**U.S. District Judge**
                                                          - 4 -

1  summary judgment motions.  Hearsay is an out of court statement offered for the truth of the matter

2  asserted and is inadmissible as evidence unless some exception applies.  Fed. R. Evid. 801.  The

3  court will address each objection in turn.

4       A.  **Legal standard**

5       "[A]t summary judgment, a district court may consider hearsay evidence submitted in an

6  inadmissible form, so long as the underlying evidence could be provided in an admissible form at

7  trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098,

8  1110 (9th Cir. 2016).  "Hearsay objections to a document in its entirety should be overruled when

9  the objected-to document reflects the personal knowledge of an individual who could be called to

10  testify at trial." *West v. Summit Collection Servs.*, Inc., No. 3-20 CV 00556-LRH-CSD, 2022 WL

11  2955196, at *7 (D. Nev. July 26, 2022)

12       "Rule 56 was amended in 2010 to eliminate the unequivocal requirement that evidence

13  submitted at summary judgment must be authenticated, the amended Rule still requires that such

14  evidence 'would be admissible in evidence' at trial." *Romero v. Nevada Dep't of Corr.*, 673 F.

15  App'x 641, 644 (9th Cir. 2016) (citing Fed. R. Civ. P. 56(c)(4)).[4]

16       B.  **Hearsay Discussion**

17           *1.  **Exhibits 10 and 13**[5]*

18       Exhibit 10 is an email sent from defendant Isaac to Scott Blakeman who is an employee at

19  Chardan—a brokerage firm used by Live.  The email was sent directly from Isaac and is offered

20  against him by the SEC. Therefore, it qualifies as an opposing party statement which is not

21  considered hearsay.  Fed. R. Evid. 801(d)(2)(A).

22       Exhibit 13 is an email from Blakeman to Isaac.  The SEC states that "Blakeman would

23  testify to the same effect at trial," (ECF No. 186 at 16), which would make the statement non-

24  hearsay, thus satisfying the rule that the evidence *could* provided in admissible form at trial.  *JL*

---

26

27      [4] Defendants argue that all disputed exhibits have not been authenticated.  However, the issue of authentication is not an absolute bar to the court's consideration at the summary judgment stage.  *See Romero*, 673 F.App'x at 644.  Thus, the court does not address authentication further in this order.

28

    [5] (ECF Nos.173-12, 173-15).

**James C. Mahan**
**U.S. District Judge**

1    *Beverage Co., LLC*, 828 F.3d at 1098.  Accordingly, exhibits 10 and 13 may be properly considered

2    at the summary judgment stage.

3                    2.  ***Exhibit 12***[6]

4         Exhibit 12 is an email exchange between George Kaufman—another employee at the

5    brokerage firm Chardan that Live was using—and Scott Blakeman regarding defendant Isaac's

6    plan to sell shares.  Defendants claim that because the email exchange is exclusively between third

7    parties and the SEC is attempting to use it to prove Isaac was planning to sell shares at a specific

8    time, it constitutes hearsay.  (ECF No. 188 at 5).

9         The SEC states it does not rely on the communication for the truth of the matter asserted,

10   but rather to show defendant Isaac's then existing state of mind under Fed. R. Evid. 803(3)'s

11   hearsay exception.  (ECF No. 186 at 16).  "The then-existing state of mind hearsay exception

12   provides, in part: 'A statement of the declarant's then-existing state of mind (such as motive, intent,

13   or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily

14   health).'" *United States v. Dougan*, 839 F. App'x 81, 84 (9th Cir. 2020) (citing Fed. R. Evid.

15   803(3)).  The email exchange in exhibit 12 does not evidence Isaac's motive, intent, or plan to sell

16   shares.  Rather, it reflects two coworkers speculating about Isaac's potential actions based on

17   Kaufman's account of a prior conversation with Isaac.  Thus, Rule 803(3) does not apply.

18        The SEC further argues the emails are statements of Isaac's agent and thus admissible

19   under Fed. R. Evid. 801(d)(2)(D).  Fed. R. Evid. 801(d)(2)(D) provides that a statement is not

20   hearsay if it is offered against a party and was made by the party's agent or employee concerning

21   a matter within the scope of that relationship during their employment.  Three elements must apply

22   for Fed. R. Evid. 801(d)(2)(D)'s hearsay exemption to be invoked:

23            (1) the statement must be made by an agent or employee of the party against whom
             the statement is being offered; (2) the statement must concern a matter within the
24            scope of that employment relationship; and (3) the statement must be made while
             the declarant is yet employed by the party.

25   *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019).

26

27

28
_____

     [6] (ECF No. 173-14).

**James C. Mahan**
**U.S. District Judge**                                    - 6 -

1      Here, both Kaufman and Blakeman are agents of defendants due to the client-stockbroker

2   relationship.  The statements were also made during the time of the agency relationship.  Thus,

3   elements one and three are satisfied.  However, it is unclear whether the emails were concerning a

4   matter within the scope of their relationship.

5      Defendants argue that Kaufman and Blakeman were merely speaking to one another as

6   colleagues and lacked the authority to speak on behalf of Isaac.  (ECF 191 at 6).  Still, Kaufman

7   and Blakeman's exchange pertained to Issac in his capacity as their client and reflected their

8   expectations of his actions within the context of their agency relationship.

9      Regardless, the court need not conclusively decide the issue of Fed. R. Evid. 801(d)(2)(D)'s

10  applicability to decide whether exhibit 12 may be considered on summary judgment.  Because the

11  SEC states that it could call Kaufman to testify at trial, the contents of exhibit 12 "could be

12  provided in an admissible for at trial," and thus may be considered when ruling on summary

13  judgment.  *JL Beverage Co., LLC*, 828 F.3d at 1098.

14      *3.  **Exhibit 18**[7]*

15      Exhibit 18 is an email sent from Gail Kyser, the accounting manager for defendant Live.

16  The email contains three attachments regarding the cancelation of common stock and the issuance

17  of "Series B Convertible Preferred" stock.  The SEC argues the statements made in the emails

18  satisfy Fed. R. Evid. 801(d)(2)(D).  (ECF No. 186 at 17).  Defendants argue these emails are

19  hearsay and Kyser's statements were not made in the scope of her employment at Live, thus Fed.

20  R. Evid. 801(d)(2)(D) is inapplicable.  (ECF No. 182 at 6).

21      Upon applying the test from *Weil*, the record supports the SEC's assertion.  922 F.3d at

22  999.  Kyser was an employee of defendants', and her statement is being used against them.  This

23  satisfies the first element.  Next, defendants argue that Kyser's role was "that of an administrative

24  assistant, and not someone that could impact corporate level decisions." (ECF No. 191 at 6).

25  However, a "matter may fall within the scope of a declarant's employment even though the

26  declarant did not have final decision-making authority on that matter."  *Weil*, 922 F.3d at 999.

27  Further, Kyser's role, as stated by defendants, was accounting manager.  (*See id.*).  Isaac stated:

28

_____

[7] (ECF No. 173-20).

**James C. Mahan**
**U.S. District Judge**

- 7 -

1    "Kyser has been with the company for I believe around 18 years. And she was managing most of

2    the accounting before [defendant Johnson] joined. You could say she's a controller … at the office

3    [; she] has everything, you know, organized and files and things like that." (ECF No. 186-3 at

4    75:19–76:1). Based on the record, the court finds that the email constitutes a statement within the

5    scope of Kyser's employment; the second element is satisfied. Lastly, the statement was made

6    while Kyser was an employee, satisfying the third element. Since all requirements are met for

7    Fed. R. Evid. 801(d)(2)(D), the statements in exhibit 18 do not constitute hearsay.

8    Additionally, the statements contained in exhibit 18 also satisfy Fed. R. Evid. 801(d)(2)(C),

9    which provides that a statement is a non-hearsay party admission if it "is offered against a party

10    and is ... a statement by a person authorized by the[defendant] to make a statement concerning the

11    subject." Subsection (C) thus requires the declarant to have specific authority from a party to make

12    a statement concerning a particular subject. There is sufficient evidence that indicates Kyser was

13    authorized, at least implicitly, to send the emails contained in exhibit 18. *See World Tech Toys,*

14    *Inc. v. CVS Pharmacy, Inc.*, No. 2:23-05567-MWC (JPRX), 2024 WL 5706160, at *4 (C.D. Cal.

15    Nov. 22, 2024).

16    Therefore, exhibit 18 as proffered would not constitute inadmissible hearsay and may be

17    considered at the summary judgment stage.

18         *4. Exhibit 19*[8]

19    Exhibit 19 is another email from Gail Kyser, this time with an attachment containing a

20    certificate of newly issued series B stock. As discussed above, because Kyser's statements were

21    made within the scope of her employment, they fall outside the rule against hearsay. Fed. R. Evid.

22    801(d)(2)(D).

23    Further, Fed. R. Evid. 801(d)(2)(B) provides that a statement offered against an opposing

24    party is not hearsay when the opposing party has "manifested that it adopted or believed [it] to be

25    true." Documents produced by a party are in discovery are deemed authentic when offered by the

26    party opponent. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 777 n. 20 (9th Cir. 2002) (citing

27    *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n. 12 (9th Cir.1996)).

28

---

[8] (ECF No. 173-21).

1    "[W]hen a document has been authenticated by a party, the requirement of authenticity is satisfied

2    as to that document with regards to all parties." *Id.* at 766.  Defendants rely on the very email and

3    attachment they now dispute in their motion for summary judgment.  (ECF Nos. 172–1 at 8; 172–

4    32).    Defendants therefore have "manifested that [they] adopted or believed [it] to be true,"

5    meeting the requirements for Fed. R. Evid. 801(d)(2)(B).

6            Thus, exhibit 19 is admissible and may be considered by this court when ruling on

7    summary judgment.[9]

8                    *5.  **Exhibits 25, 26, 32, and 33**[10]

9            Exhibits 25 and 26 are website captures of articles published on StockMarketLeader.com

10    and SmallCapLeader.com, respectively.  Exhibits 32 and 33 are just more legible versions of these

11    same articles.  The articles do not list an individual author for either article and instead are

12    attributed to the websites themselves.  Defendants argue that the SEC is using the articles for the

13    truth of the matter asserted—that the respective authors were compensated by ProTrader Elite

14    LLC—in support of the assertion that Isaac misled investors about hiring a stock promoter.  (ECF

15    No. 182 at7).  Defendants asserts the SEC impermissibly relies on this exhibit when it stated:

16    "[l]astly, Isaac's Letter to Stockholders, in which he falsely denied that Live had hired paid stock

17    promoters and created the false impression that Live did not seek to sell the stock during its recent

18    price fluctuations, only make it clearer that he acted with scienter."  (ECF No. 173 at 21).

19            The SEC counters by stating it is not using the articles for the truth of the matter asserted

20    but rather as evidence of the existence of a promotional campaign.  (ECF No. 186 at 18).  The

21    court agrees with the SEC.  When the SEC alleged Isaac misled investors regarding the stock

22    promoter, the SEC cites to two consulting agreements between Live and ProTrader Elite LLC

23    _____

24        [9] It is worth noting that Fed. R. Evid. 803(15) is inapplicable despite the SEC's partial reliance on this rule.
    For the rule to apply, "the document containing hearsay must 'purport[ ] to establish or affect an interest in property,'
25    Fed. R. Evid. 803(15), which generally means that it must be a 'dispositive document' such as a formal title document,
    mortgage, lien, or the like." *United States v. $148,145.00 in U.S. Currency*, No. CV 18-0670 PVC, 2023 WL 9002754,
26    at *9 (C.D. Cal. Nov. 30, 2023).  Stock certificates, like the one found attached to exhibit 19, are insufficient to meet
    the requirement for 803(15).  *See Fu v. Wolf*, No. 220CV11636CASJEMX, 2021 WL 6104795, at *6 (C.D. Cal. Dec.
27    6, 2021) ("the stock certificate alone without the stock ledger was not sufficient to determine whether the shares were
    subsequently transferred.").
28

        [10] (ECF Nos. 173-27, 173-28, 173-34, 173-35).

**James C. Mahan**
**U.S. District Judge**

1    (ECF Nos. 173-23; 173-25), an email regarding one of the agreements (ECF 173-24), transaction

2    receipts establishing that Live made two $60,000 payments to ProTrader Elite (ECF 173-11), and

3    the transcript of Isaac's investigative testimony (ECF No. 173-47).  This evidence supports the

4    SEC's assertion that Isaac entered into contracts with ProTrader Elite for a stock promotion

5    campaign.  Exhibits 25 and 26 (and by extension exhibits 32 and 33) merely show examples of

6    what the promotion set in the agreement looked like; they are not being used to establish that Isaac

7    entered the contracts or that he misled investors regarding the agreements.  Therefore, exhibits 25,

8    26, 32, and 33 are not hearsay and may be considered at summary judgment.

9                            6.  *Exhibit 39*[11]

10          Exhibit 39 is another webpage printout from the homepage of the Financial Accounting

11    Standards Bureau ("FASB") that states, in relevant part, that FASB's "Accounting Standards

12    Codification (Codification or ASC) is the single source of authoritative nongovernmental U.S.

13    generally accepted accounting principles (US GAAP)." (ECF No. 173-41).  Defendants claim this

14    is an out of court statement that the SEC uses to prove the truth of the matter asserted.  (ECF

15    No.182 at 8).  While it may be true that the exhibit is an out of court statement used for the truth

16    of the matter asserted, striking it from the record fails to meaningfully alter the position of the

17    court.

18          Rule 201 permits a court to take judicial notice an adjudicative fact if it is "not subject to

19    reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is

20    "generally known," or "can be accurately and readily determined from sources whose accuracy

21    cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2).  Courts routinely accept FASB's

22    ASC, along with SEC Rules and interpretations, as sources of authoritative GAAP.  *See e.g. May*

23    *v. KushCo Holdings, Inc.*, No. 819CV00798JLSKES, 2020 WL 6587533, at *1 (C.D. Cal. Sept.

24    25, 2020); *MetroPCS California, LLC v. Reynolds*, No. 3:17-CV-05959-JD, 2023 WL 4993683,

25

26

27

28
_____

[11] (ECF No. 173-41).

**James C. Mahan**
**U.S. District Judge**                                    - 10 -

1    at *7 (N.D. Cal. Aug. 4, 2023).  Accordingly, this court judicially notices that FASB's ASC serves

2    as an authoritative source of GAAP.[12]  It is therefore unnecessary to strike exhibit 39.

3                    *7.  Exhibit 43[13]*

4            Exhibit 43 is a copy of excerpts from the investigative testimony of Scott Blakeman, the

5    previously discussed employee at the brokerage firm Chardan.  Defendants argue that the SEC

6    uses Blakeman's testimony to prove Isaac intended to sell Live shares at a profit from the

7    December 28, 2016, press release.  (ECF No. 182 at 8).  Defendants claim this is hearsay because

8    Blakeman has not been deposed in this action and his statements are being used to prove the truth

9    of the matter asserted.  (*Id.*).

10           Contrary to defendants' position, a witness who has been interviewed under penalty of

11   perjury may be treated as a declaration and can therefore be considered in ruling on a summary

12   judgment motion.  *S.E.C. v. Phan*, 500 F.3d 895, 913 (9th Cir. 2007).  Here, Blakeman was sworn

13   and examined under penalty of perjury when he was interviewed by the SEC.  Therefore,

14   Blakeman's statements are considered the equivalent of a declaration and the court will consider

15   the testimony given when ruling on summary judgment.  This is not to say, however, that

16   Blakeman's testimony could ultimately be used at trial.

17                    *8.  Exhibit 52[14]*

18           Exhibit 52 is a set of records reflecting a series of wire transfers sent or received by Isaac.

19   Defendants claims the exhibit is hearsay because the SEC is using it to prove that certain wire

20   payments were sent to Isaac.  (ECF No. 188 at 3).  Defendants also hold that there is no indication

21   where the record came from and there are no accompanying business records declaration from the

22   producing institution as required by the Federal Rules of Evidence.[15]  (*Id.*).

---

[12] Defendants make a specific argument that exhibit 39 has not been authenticated properly.  However, as stated in *supra* note 4, authentication is not an issue for the court's ruling on summary judgment.  Further, this argument is moot given that the court takes judicial notice of the contents within exhibit 39.

[13] (ECF No. 173-45).

[14] (ECF No. 183-3).

[15] Defendants cite to "FRE 806(d)" for this proposition.  (ECF No. 188 at 3).  However, this is likely a citing error given there is no such rule.  The court—as did the SEC—assumes defendants are referring to the records of a regularly conducted activity exception to hearsay contained in Fed. R. Evid. 803(6).

**James C. Mahan**
**U.S. District Judge**

1    The SEC responds by pointing to the bates stamp at the bottom of each page of exhibit 52

2    which aligns with the SEC's initial disclosure identifying the producing party as Wells Fargo.

3    (ECF No. 190 at 2; s*ee* ECF No. 174-12).  The SEC then states that the exhibit is admissible under

4    Fed. R. Evid. 801(d)(2)(B) and Fed. R. Evid. 803(6).  (ECF No. 190 at 2).

5    As discussed above, Fed. R. Evid. 801(d)(2)(B) provides that a statement offered against

6    an opposing party is not hearsay when the opposing party has "manifested that it adopted or

7    believed [it] to be true."  When the SEC deposed Isaac, he was shown exhibit 52 and questioned

8    about it.  (ECF No. 183-41).  Isaac discussed some of the transfers contained within the exhibit

9    and acknowledged that he believed they were accurate.  (*Id.* at Tr. 393–397; 410–411).  Therefore,

10   the SEC may use exhibit 52 for the truth of the matter asserted since Isaac has manifested he

11   believes the content within to be true.  Fed. R. Evid. 801(d)(2)(B).

12   Further, Fed. R. Evid. 803(6) excludes a document from the general rule against hearsay if

13   it qualifies as a business record.  A document is considered a business record if:

14       (A) the record was made at or near the time by—or from information transmitted
    by—someone with knowledge; (B) the record was kept in the course of a regularly

15       conducted activity of a business, organization, occupation, or calling, whether or
    not for profit; (C) making the record was a regular practice of that activity; (D) all

16       these conditions are shown by the testimony of the custodian or another qualified
    witness, or by a certification that complies with Rule 902(11) or (12) or with a

17       statute permitting certification; and (E) the opponent does not show that the source
    of information or the method or circumstances of preparation indicate a lack of

18       trustworthiness.

19   *Id.*  Defendants argue that because the document was not accompanied by a business record

20   declaration, the exception is not satisfied.  (ECF No. 188 at 3).  However, the SEC states that it

21   can call a Wells Fargo custodian to testify to the accuracy of the record which would satisfy the

22   requirement.  (ECF No. 190 at 3).  Because the SEC could make the evidence admissible at trial

23   under Fed. R. Evid. 803(6) by calling such a witness, the court may consider it on summary

24   judgment.  *JL Beverage Co., LLC*, 828 F.3d at 1098.

25   . . .

26   . . .

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

1

                              **9.  *Exhibit 53*[16]**

2

        Exhibit 53 is a document summarizing unexecuted orders placed in the Fidelity Brokerage

3 Services LLC ("Fidelity") account of Kingston.  Defendants argue that it constitutes hearsay

4 because the SEC is using it to prove Kingston placed on December 28, 2016.   (ECF No. 188 at

5 3).  Defendants reason that the SEC has provided no basis or evidence for defendants to know

6 whether the underlying information used to create the summary is admissible, as required under

7 Fed. R. Evid. 1006.   (*Id.*).   Finally, defendants argue that because the SEC provides no

8 accompanying business records declarations, the exhibit would not be exempted under Fed. R.

9 Evid. 803(6).[17]  (*Id.*).

10         Fed. R. Evid. 1006 states "[t]he contents of voluminous writings, recordings, or

11 photographs which cannot conveniently be examined in court may be presented in the form of a

12 chart, summary, or calculation."  The Rule is designed to offer "the only practicable means of

13 making their contents available to judge and jury."  Fed. R. Evid. 1006, Advisory Committee's

14 note to proposed rules (1972).  However, FRE 1006 "is limited to summaries which prove the

15 content of the underlying documents," and does not permit evidence that "contain[s] information

16 not provided by the underlying documents, including interpretations of the information[.]" *Allison*

17 *v. Dolich*, Case No. 3:14-cv-1005-AC, 2018 WL 834919 (D. Or. Feb. 12, 2018) (citing *S.E.C. v.*

18 *Amazon Nat. Treasures, Inc.*, 132 Fed. Appx. 701, 703 (9th Cir. 2005)).   The proponent of a

19 summary exhibit must also establish that the underlying materials on which the summary is based

20 are admissible. *Amarel v. Connell*, 102 F.3d 1494, 1516 (9th Cir. 1996).

21         Here, contrary to defendants' contention that the SEC provided them no basis to know

22 whether the information was admissible, exhibit 53 states that summarized information was

23 included in the SEC's initial disclosures.  (ECF No. 183-4) ("Summary of information contained

24 in SEC-FB-E-0001098").  Still, to satisfy Fed. R. Evid. 1006, the underlying information must be

25 admissible.  The SEC asserts that Fed. R. Evid. 803(6) applies and that it could call a Fidelity

26

27         [16] (ECF No. 183-4).

28         [17] Defendants again cite to the nonexistent "FRE 806(d)," and the court assumes defendants are referring to Fed. R. Evid. 803(6).  (ECF No. 188 at 3).

**James C. Mahan**
**U.S. District Judge**

- 13 -

1    custodian at trial to satisfy the exception.  (ECF No. 190 at 3).  Therefore, the underlying evidence

2    could be admissible and thus the exhibit complies with Fed. R. Evid. 1006 allowing it to be

3    considered by the court at summary judgment. *JL Beverage Co., LLC*, 828 F.3d at 1098.

4                    *10.   Exhibit 54*[18]

5            Exhibit 54 is another summary the SEC created based on information produced by Fidelity

6    as well as information that is publicly available.  The summary analyzes the IP addresses used to

7    access Kingston's online Fidelity account on December 28, 2016.  Defendants make the same

8    arguments to exhibit 54 as they did to exhibit 53.  (*See* ECF No. 188 at 3–4).  The discussion of

9    Fed. R. Evid. 1006 and Fed. R. Evid. 803(6) from above applies here. The SEC provided a bates

10   stamp matching its initial disclosures in addition to the source of the public information used.

11   (ECF No. 183-5) ("Summary of information contained in SEC-FB-0001082;" "Geographical

12   information obtained using MaxMind subscription service;" TOR exit node identified using

13   ExoneraTor.")  The SEC stated it could call a Fidelity custodian to testify to the underlying

14   evidence of the summary, which would satisfy Fed. R. Evid. 803(6) and therefore, Fed. R. Evid.

15   1006.  (ECF No. 190 at 4).  Accordingly, the court can consider exhibit 54 at summary judgment.

16   *JL Beverage Co., LLC*, 828 F.3d at 1098.

17                   *11.   Exhibit 58*[19]

18           Exhibit 58 is an account statement for Kingston's Fidelity account from December 2016.

19   The SEC uses exhibit 58 for two purposes: to prove that Kingston's address of record at Fidelity

20   in December 2016 was an address used by Isaac and that the executed orders generated proceeds

21   of approximately $48,000.[20]  (ECF No. 190 at 5).  Defendants claim the use of exhibit 58 regarding

22   the proceeds constitutes hearsay without an exception.  (ECF No. 188 at 4).

23

24

25   ─────────────────────

26           [18] (ECF No. 183-5).

27           [19] (ECF No. 183-9).

28           [20] The court also agrees with the SEC that the use of exhibit 58 for purposes of establishing Kingston's
     address is not hearsay since it is not being offered to prove the truth of the matter asserted.

**James C. Mahan**
**U.S. District Judge**                                      - 14 -

1    Again, the SEC stated it could call a Fidelity custodian at trial which would satisfy the

2    exception under Fed. R. Evid. 803(6).  (ECF No. 190 at 5).  Thus, the court can consider exhibit

3    58 when deciding on summary judgment.  *JL Beverage Co., LLC*, 828 F.3d at 1098.

4            *12.  **Exhibit 65**[21]*

5            Exhibit 65 is another account statement for Kingston's fidelity account, this time from

6    November 2017.  Defendants contend that it is hearsay because it is being used to assert the truth

7    that certain wire transfers were made from Kingston's brokerage account to Isaac.  (ECF No. 188

8    at 4).  Live produced exhibit 65, as evidenced by the bates stamps located on the bottom right

9    corner of the documents.  (*See* ECF No. 183-16).  Thus, it is not hearsay because it is a statement

10   offered against Live and Live's principal in an individual or representative capacity or that Live

11   has manifested that it adopted or believed to be true.  *See* Fed. R. Evid. 801(d)(2)(A), (B).

12   Accordingly, the court can consider exhibit 65 on summary judgment.[22]

13           C.  **Advocate-witness rule**

14           Defendants contest two paragraphs contained in Stillwell's declaration.  Paragraph 19

15   details communications with defendants' counsel during the SEC investigation and highlights the

16   absence in defendants' production of any documents evidencing communications between Isaac

17   to Live's former auditor related to Live's December 28, 2016, press release.  In paragraph 27,

18   Stillwell asserts that the earliest version of the ApplianceSmart Stock Purchase Agreement

19   produced by defendants is attached as exhibit 71.  Defendants aver that paragraphs 19 and 27 of

20   Stillwell's declaration contain improper fact testimony in violation of the advocate witness rule.

21   (ECF No. 188 at 4).  However, defendants misunderstand the purpose of the rule.

22           "The advocate-witness rule prohibits an attorney from appearing as both a witness and an

23   advocate in the same litigation."  *United States v. Prantil*, 764 F.2d 548, 552–53 (9th Cir. 1985).

24   The rule is compelled by the central principle of our adversarial system: juries must ground their

25   verdicts in the facts presented, not in counsel's credibility.  *Id.* at 553.  The Nevada Rules of

26

27           [21] (ECF No. 183-16).

28           [22] Even if exhibit 65 was hearsay, the court could still consider it at the summary judgment stage since the
     SEC could call a Fidelity custodian at trial to satisfy Fed. R. Evid. 803(6).  *JL Beverage Co., LLC*, 828 F.3d at 1098.

**James C. Mahan**
**U.S. District Judge**                                      - 15 -

1   Professional Conduct 3.7 codified the advocate witness rule stating that "a lawyer shall not act as

2   advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) [t]he testimony

3   relates to an uncontested issue; (2) [t]he testimony relates to the nature and value of legal services

4   rendered in the case; or (3) [d]isqualification of the lawyer would work substantial hardship on the

5   client."

6        Here, defendants do not contest the facts presented in either paragraph of Stillwell's

7   declaration. Defendants state that they may wish to "take Stillwell's testimony regarding his

8   assertions, methods of conducting the reported searches, and so on." (ECF No. 188 at 4). While

9   they suggest that Stillwell's search methods may be faulty, this does not implicate the advocate-

10   witness rule. Thus, the court denies defendants' request to strike these paragraphs from the record.

11   **IV.    Conclusion**

12        Accordingly,

13        IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motions to

14   strike (ECF No. 170), (ECF No. 171), (ECF No. 182), and (ECF No. 188) be, and the same hereby

15   are, DENIED.

16        DATED September 22, 2025.

17

18                           UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**